**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

ZACHARY TUCKER,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

PAPA JOHN'S INTERNATIONAL,
INC., and PAPA JOHN'S USA, INC.,

Defendants.

No. 14-618-NJR-PMF

Removed from Madison County
Circuit Court, State of Illinois
Case No. 2014-L-000668

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants, Papa John's International, Inc. and Papa John's USA, Inc. ("Defendants"), remove this action, which is currently pending in the Third Judicial Circuit for Madison County, Illinois (the "State Court"), to the U.S. District Court for Southern District of Illinois. The grounds for removal are set forth below.

**I.**
**THE STATE COURT ACTION**

1. About May 5, 2014, Plaintiff, Zachary Tucker, commenced this putative class action by filing a Class Action Complaint and Demand for Jury Trial (the "Complaint") in the State Court against Defendants, Papa John's International, Inc. ("PJI") and Papa John's USA, Inc. ("PJUSA"), as Case No. 2014-L-000668 (the "State Court Action").

2. In the Complaint, Plaintiff alleges that he brought this action on behalf a putative class comprising "[a]ll persons who ordered food from any Papa John's location in the State of Illinois and selected to have their order delivered, were charged a delivery fee, and charged and paid sales tax on the itemized delivery fee." Compl. ¶ 18.[1]

3. Plaintiff further alleges that (a) Defendants own or have a financial interest in 122 restaurant locations in the State of Illinois, *id*. ¶ 8; (b) Defendants and all their franchised Papa John's locations throughout Illinois have charged and continue to charge unlawful sales taxes on delivery orders, *id*. ¶¶ 11, 17; (c) Defendants mandate this billing practice in each Papa John's restaurant and most if not all of them follow this practice, *id*. ¶¶ 12–13; and, as a result, (d) "every customer who has ordered food for delivery from any Papa John's location in Illinois has paid excess sales tax that Defendants and other franchise owners were not entitled to collect," *id*. ¶ 16.

4. Based on these allegations, Plaintiff purports to assert claims for negligence (Count I), negligent misrepresentation (Count II), "Breach of Contract/Breach of Duty of Good Faith and Fair Dealing" (Count III), "Declaratory Relief" (Count IV), and violations of the Illinois Consumer Fraud Act ("ICFA" [Count V]) and the Illinois Uniform Deceptive Trade Practices Act (["IUDTPA"] Count VI). *Id*. ¶¶ 29–75. The Complaint seeks compensatory, consequential, statutory, and "treble" damages, restitution, injunctive and declaratory relief, and statutory attorneys' fees. *See, e.g.*, *id*. ¶¶ 21, 68–69, and p. 16 (Prayer for Relief)

5. On May 16, 2014, Defendants accepted service of the Complaint.

---

[1] Simultaneously with the Complaint, Plaintiff filed a motion to certify the putative class.

**II.**

**SUBJECT-MATTER JURISDICTION**

6. The Court has original subject-matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2; 28 U.S.C. §§ 1332(d), because the parties are minimally diverse and the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

7. Statutory Class Action. The State Court Action was filed as a putative class action pursuant to Illinois's class-action rule, 735 Ill. Comp. Stat. 5/2-801. *See* Compl. ¶ 1. Accordingly, this action falls within CAFA's definition of a class action as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §§ 1332(d)(1)(B), 1453(a).

8. More than 100 Putative Class Members. Plaintiff seeks to recover delivery charges paid by each person who ordered food for delivery from each of the 122 Papa John's restaurants in Illinois. *See* Compl. ¶¶ 8, 11–13, 16–17. Thus, the number of proposed class members is greater than 100 persons for purposes of 28 U.S.C. § 1332(d)(5)(B).

9. Minimal Diversity. The diversity of citizenship required by 28 U.S.C. § 1332(d)(2)(A) exists because at least one member of the putative class is diverse from at least one defendant. PJI is a Delaware corporation with its principal place of business in Louisville, Kentucky, and is therefore a citizen of Delaware and Kentucky for diversity purposes. *See* 28 U.S.C. § 1332(c)(1); Compl. ¶ 5. PJUSA is a Kentucky corporation with its principal place of business in Louisville, Kentucky, and is therefore a citizen of Kentucky for diversity purposes.

*See* 28 U.S.C. § 1332(c)(1); Compl. ¶ 7. Plaintiff, Tucker, alleges that he is a citizen of Illinois, *id*. ¶¶ 2, 5, and he sues on behalf of a putative class of persons who ordered food from Papa John's locations through the state of Illinois, *id*. ¶ 18. Thus, it is clear that at least one member of the putative class is a citizen of a State—Illinois—other than Delaware and Kentucky.

10. Amount in Controversy. Under CAFA, the claims of individual putative class members are aggregated to determine if the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2), (6). Once the removing defendant "has explained plausibly how the stakes exceed $5,000,000, the case belongs in federal court unless it is *legally impossible* for the plaintiff to recover that much." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011) (citations omitted) (emphasis added); *see also Appert v. Morgan Stanley Dean Witter, Inc*., 673 F.3d 609, 617 (7th Cir. 2012) (a "good-faith estimate that plausibly explains how the stakes exceed $5 million" is sufficient). Here, Plaintiff seeks, on his own behalf and on behalf of the putative class, compensatory, consequential, statutory, and "treble" damages, restitution, injunctive and declaratory relief, and statutory attorneys' fees. Without conceding any merit in the claims Plaintiff attempts to assert or the damages he claims, his allegations in the Complaint concerning the amount in controversy satisfy CAFA's jurisdictional threshold.

11. As actual damages, Plaintiff seeks to recover (a) for himself, sales tax that he believes to have been 6.85% or $.16 on a delivery fee of $2.39 and (b) for the putative class, similar charges for each delivery made by each of 122 Illinois Papa John's restaurants over an undefined period.

12. As shown by the Declaration of Claude M. Phenix,[2] PJI's Senior Director, Tax, the 122 Illinois Papa John's corporate and franchised restaurants have collected the following amounts of sales taxes on delivery charges during the years 2009–2014:

| Year | Taxes Collected on Delivery Charges |
|---|---|
| 2009 | $31,881.48 |
| 2010 | $43,637.31 |
| 2011 | $75,634.76 |
| 2012 | $141,100.18 |
| 2013 | $178,795.84 |
| Jan. 1–May 21, 2014 | $69,866.16 |
| **Total[3]** | **$540,915.73** |

13. Additionally, the Court includes punitive damages potentially available under the governing law in determining the amount in controversy. *See Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2011) (summary reversal of CAFA remand order for failure to include in the amount in controversy punitive damages of $3.5 million, or 500% of actual damages, which were "not impossible," as that percentage was consistent with past awards under the ICFA and likely within the federal due process limits suggested in *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)).[4]

[2] A copy of the Phenix Declaration is attached as **Exhibit A**.

[3] Actual tax rates on delivery fees at a certain subset of Illinois Papa John's restaurants could be .005-.01 less than the rates utilized in this calculation.

[4] *Cf. Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 317–18 (7th Cir. 1996) (observing in a pre-*Campbell* case, that, although "[p]unitive damage awards for two or three times actual damages have been sustained," a punitive

14. Although the Complaint does not specifically demand punitive damages, Plaintiff asserts consumer fraud claims for which punitive damages are available. *See* 815 Ill. Comp. Stat. 505/10a(a). Potential punitive damages must therefore be included in determining the amount in controversy. *See Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co*., 637 F.3d 827, 831 (7th Cir. 2011) (error not to consider potential punitive damage award when assessing amount in controversy, even though complaint did not specifically demand such damages, because punitive damages are available under the ICFA and "[Plaintiff] does not cite any decision by an Illinois court holding that such an omission from a complaint makes a punitive award *impossible*.") (emphasis in original); *Oshana v. Coca-Cola Co*., 472 F.3d 506, 512 (7th Cir. 2006) ("[A]lthough the complaint was silent about punitive damages, the ICFA permits recovery of punitive damages," and they counted in determining the amount in controversy); *De Falco v. Vibram USA, Inc*., No. 12-cv-7238, 2013 WL 1122825, at *6 (N.D. Ill. Mar. 18, 2013).

15. Interpreting United States Supreme Court precedent, the Illinois Supreme Court has approved a punitive damage award with a ratio to compensatory damages of approximately 11 to 1. *See Int'l Union of Operating Eng'rs, Local 150 v. Lowe Excavating Co*., 870 N.E.2d 303, 309 (2006), *cert. denied*, 552 U.S. 1099 (2008). A punitive damages award in this case with a substantially lower ratio of 9 to 1 would be $4,868,241 ($540,915.73 × 9 = $4,868,241.60). The addition of this amount to the claimed compensatory damages yields a sum of $5,409,157 ($540,915.73 + $4,868,241.60 = $5,409,157.33)—an amount that exceeds the $5 million requirement by more than four hundred thousand dollars.

---

damage recovery "in such a large multiple of a compensatory recovery as 17.35 times stretches the normal ratio, and would face certain remittitur.")

16. The value of the injunctive and declaratory relief demanded in the Complaint further confirms that the amount-controversy far exceeds the required $5 million.[5] If Plaintiff obtains the injunctive relief he seeks, each putative class member will achieve a cost savings that can be conservatively estimated at $.19 (07.783% [an extremely conservative estimate of the average tax rate charged on sales by Illinois Papa John's stores in 2014[6]] × the $2.39 delivery charge alleged in the Complaint = $.186014) each time he or she places an order for delivery from Papa John's in the future. Although neither the *exact* number of putative class members who will place a delivery order in the future nor the *precise* frequency of their future orders can be known, it cannot reasonably be doubted that a large percentage of them will continue to be repeat customers. From 2005 to 2014, (i) approximately 83% of the annual delivery sales by Papa John's Illinois restaurants were made to customers who ordered more than once during the same year ("Repeat Customers"); (ii) approximately 50.67% of all deliveries were made to such customers; and (iii) on average, the same household ordered food for delivery 2–3 times in the same year. Thus, it cannot reasonably be doubted that a large percentage of the putative class members will continue to be, as they have been in the past, Repeat Customers.[7]

---

5 *See Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010) (for amount in controversy purposes, the value of injunctive relief is the value of the object of the litigation measured from either the plaintiff's or the defendant's perspective), *cert. denied*, 131 S. Ct. 1045 (2011); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006).

6 This rate reflects the average sales tax rate on sales at the Illinois stores in 2014 (0.08783) as initially computed by Papa John's, adjusted downward by .01 to reflect the possibility that delivery fees at certain stores may have been subject to a sales tax rate slightly lower (by 0.005–0.01) than the rate used to calculate the annual sales taxes charged.

7 Prospective injunctive relief would be meaningless, and it could not be granted in this Court, unless putative class members were likely to order from Papa John's in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983) (standing to bring a claim for prospective or injunctive relief requires "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way."); *cf.* 815 Ill. Comp. Stat. 510/2, 3 (under the IUDTPA, "a person *likely* to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable.") (emphasis added).

17. Conservative estimates of the number of continued Repeat Customers confirm that the amount-controversy in this matter exceeds $5 million. For example, if half of the number of delivery orders placed with each store annually (an average of 1,754,753 orders per year during the period 2009–2013) are placed by putative class members, the taxes not collected on those orders, if the requested injunctive relief is granted, can be conservatively estimated at $163,202.20 ([1,754,753 ÷ 2 = 877,366.5] orders per year × $.186014 sales tax per delivery = $163,202.20) annually—assuming, for simplicity, no increase in the delivery charge or the applicable sales tax rates. The value to the class of the resulting cost-savings may be conservatively estimated at $2,033,860.14—the present value of $163,202.20 per year for 20 years, discounted at 5% per year. *Compare Keeling*, 660 F.3d at 274 (estimating monetary value of injunctive relief at the present value of estimated annual profits foregone of $125,000 a year for 20 years using a 5% discount rate). When this amount is considered together with the actual damages demanded in the Complaint and potential punitive damages, it cannot reasonably be doubted that the amount in controversy greatly exceeds $5 million.

18. Additionally, Plaintiff seeks an award of attorneys' fees under IFCA and IUDTPA.[8] Fees incurred up to the time of removal are part of the amount in controversy. *ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 479 (7th Cir. 2011). In view of the early stage at which Defendants removed this case, the amount of attorneys' fees currently at issue may be relatively small. But these fees would nonetheless further support the conclusion that the amount in controversy exceeds $5 million.

---

[8] *See* Compl. ¶¶ 21(r), 68, p. 16(g) (Prayer for Relief); *see also* 815 Ill. Comp. Stat. 505/10a(c) (except as provided in other subsections, the court "may award . . . reasonable attorney's fees and costs to the prevailing party"); 815 Ill. Comp. Stat. 510/3 (costs and attorneys' fees may be assessed against a defendant for a IUDTPA violation if the court finds that he has wilfully engaged in a deceptive trade practice).

19. Finally, Plaintiff's unsupported assertion in the Complaint that, in his opinion, the amount in controversy does not exceed $5 million, cannot bind the class and is entitled to no weight. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (named plaintiff's precertification ***stipulation*** as to the amount in controversy could not bind the putative class and therefore could not defeat jurisdiction under CAFA); *Back Doctors*, 637 F.3d at 830 ("When removing a suit, the defendant . . . is entitled to present its own estimate of the stakes; it is not bound by the plaintiff's estimate.").

20. For these reasons, the allegations in the Complaint and the facts in this Notice of Removal demonstrate that the amount in controversy far exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## III.
## NO GROUNDS FOR ABSTENTION

21. Although CAFA has provisions under which a district court may or shall decline jurisdiction, none applies in this case. *See* 28 U.S.C. § 1332(d)(3) & (4). Sections 1332(d)(3), 1332(d)(4)(A), and 1332(d)(4)(B) (the "interest of justice" exception, the "local controversy exception" and the "home state exception," respectively) do not apply because the Defendants are not citizens of the State of Illinois, where this action was originally filed. *See* 28 U.S.C. § 1332(d)(3), (d)(4)(A)(II)(cc), and 1332(d)(4)(B). Additionally, this action is not one described in 28 U.S.C. §§ 1332 or 1453 as being non-removable.

22. In short, Plaintiff has not alleged and cannot carry his burden of proving the applicability of any statutory exception to the rule requiring district courts to exercise the jurisdiction conferred by Congress. *See Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675,

682 (7th Cir. 2006) (plaintiff bears the burden of proving the applicability of the home-state and local controversy exceptions).

**IV.**

**OTHER PROCEDURAL REQUIREMENTS**

23. Timeliness. This Notice of Removal is filed within thirty days after the Papa John's Defendants accepted service of the Complaint. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

24. Venue. This district embraces the county (Madison) in which the State Court action is now pending. Therefore, this Court is the proper venue for this action pursuant to 28 U.S.C. §§ 93(c) and 1441(a).

25. Notice. Pursuant to 28 U.S.C. § 1446(d), the Papa John's Defendants will give written notice of the filing of this Notice of Removal to all parties in this action and will promptly file a copy of this Notice of Removal with the State Court.

26. State Court Papers. Pursuant to 28 U.S.C. § 1446(a), a full copy of the State Court file – including all process, pleadings, and orders that have been served upon Defendants - is attached as **Exhibit B**.

**CONCLUSION**

For the reasons set forth above, the Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d) and this action is removable under 28 U.S.C. §§ 1441(a) and 1453. If the Court disagrees or if Plaintiff seeks remand, Defendants request leave to submit additional evidence to supplement this short and plain statement of the grounds for removal.[9]

[9] *See* 28 U.S.C. § 1446(a) (notice of removal requires only "a short and plain statement of the grounds for removal."); *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (Section 1446(a) establishes "a pleading

Dated: May 29, 2014                                    Respectfully submitted,

/s/ W. Jason Rankin
Larry E. Hepler
W. Jason Rankin
HeplerBroom LLC
130 North Main Street
Edwardsville, Illinois  62025
Telephone: (618) 656-0184
Facsimile: (618) 656-1364
leh@heplerbroom.com
wjr@heplerbroom.com
*Counsel for Defendants,*
*Papa John's International, Inc.,*
*and Papa John's USA, Inc.*

and

David B. Weinstein
weinsteind@gtlaw.com
Nicholas J. Secco
seccon@gtlaw.com
Andrew J. Patch
patcha@gtlaw.com
**GREENBERG TRAURIG, P.A.**
625 East Twiggs Street, Suite 100
Tampa, Florida  33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
*Counsel for Defendants,*
*Papa John's International, Inc.,*
*and Papa John's USA, Inc.*

---

requirement, not a demand for proof").  *But see Dart Cherokee Basin Operating Co., LLC v. Owens*, 730 F.3d 1234 (10th Cir. 2013), *cert. granted*, 134 S. Ct. 1788 (Apr. 7, 2014).

**CERTIFICATE OF SERVICE**

I certify that on May 29, 2014, a copy of the foregoing was sent by first-class U.S. Mail and electronic mail to Alan F. Wagner (AlanWagner@WagnerLaw.com) and Jason Whittemore (Jason@WagnerLaw.com), 601 Bayshore Boulevard, Suite 910, Tampa, Florida, 33606, and to Francis J. Flynn (casey@jefflowe.pc.com), 8235 Forsyth Boulevard, Suite 1100, St. Louis, MO 63105-1643..

/s/ W. Jason Rankin
Attorney