**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ZACHARY TUCKER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No. 3:14-cv-00618-NJR-PMF |
| v. | |
| PAPA JOHN'S INTERNATIONAL, INC., and PAPA JOHN'S USA, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**DEFENDANTS, PAPA JOHN'S**
**INTERNATIONAL AND PAPA JOHN'S USA'S**
**MOTION TO DISMISS CLASS ACTION COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants, Papa John's International, Inc., and Papa John's USA, Inc., move this Court to dismiss the entirety of Plaintiff Zachary Tucker's Class Action Complaint and Demand for Jury Trial ("Complaint") with prejudice for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

This action must be dismissed. Illinois law plainly holds that no action of any kind can be maintained to recover collected taxes that have been remitted to the state. Further, Plaintiff's suit is barred the voluntary payment doctrine and each of his claims is fatally deficient.

The Illinois Use Tax Act ("UTA") imposes a tax "upon the privilege of using in this State tangible personal property purchased at retail from a retailer . . . ." 35 ILCS 105/3 (2014). Under the UTA, retailers are required to collect the tax from purchasers at the time of the sale by adding it to the price of the item and separately stating the amount of the tax on the purchaser's bill. *See In re Markos Gurnee P'ship*, 163 B.R. 124, 131 (Bankr. N.D. Ill. 1993). The retailer

then holds the tax in trust for the benefit of the Illinois Department of Revenue ("IDOR").  35 ILCS 105/8.  Thereafter, the retailer *must* remit the tax to the IDOR.  35 ILCS 105/3-45.[1]  Once the sales tax has been remitted to the IDOR, *the purchaser cannot maintain a claim to recover the tax*.  *See Adams v. Jewel Cos., Inc.*, 63 Ill. 2d 336, 343-46 (1976).

In his Complaint, Plaintiff alleges that after he placed a delivery order by phone with a Papa John's location in Wood River, Illinois, he was charged a sales tax on the delivery fee that, he maintains, was not required by the UTA.  Compl. at ¶ 17.  Significantly, however, Plaintiff (1) does *not* allege that he objected to the payment of the sales tax; (2) does *not* allege that the Defendants intentionally charged sales tax on exempt amounts; (3) does *not* allege that Defendants retained the alleged overcharges instead of remitting them—as Illinois law requires—to the IDOR; (4) does *not* allege that Defendants benefitted in any way from collecting the alleged overcharges; (5) does *not* allege that Defendants—who, like other retailers, would presumably rather charge less than their competitors, not more—had any incentive to charge sales tax on exempt amounts; and (7) does *not* allege that he ever requested a refund from Defendants before filing this lawsuit.

Based on the allegations in the Complaint, Plaintiff—ignoring clear Illinois law— attempts to assert claims for Negligence (Count I), Negligent Misrepresentation (Count II), Breach of Contract and Breach of Duty of Good Faith and Fair Dealing (Count III), Declaratory Relief (Count IV), violation of the Illinois Consumer Fraud Act ("ICFA") (Count V), and violation of the Uniform Deceptive Trade Practices Act ("UDTPA") (Count VI).  In addition, Plaintiff seeks to represent a class of "[a]ll persons who ordered food from any Papa John's

---

[1]  The retailer's obligation to remit the use tax is also satisfied if it pays to the IDOR the corresponding retailers' occupation tax, which is imposed upon retailers' gross receipts.  *See In re Groetken*, 843 F.2d 1007, 1010-11 (7th Cir. 1988) (discussing the relationship between the UTA and the Retailers' Occupation Tax Act ("ROTA")).

location in the State of Illinois and selected to have their order delivered, were charged a delivery fee, and were charged and paid sales tax on the itemized delivery fee."  Compl. at ¶ 18.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must include factual allegations that, when taken as true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A conclusory statement of the elements of a claim does not suffice.  *Id*.  Rather, legal conclusions "must be supported by factual allegations."  *Id*.  Thus, while courts accept well-pleaded factual allegations as true for purposes of reviewing the sufficiency of a complaint, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."  *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Additionally, claims based in fraud, such as those under the ICFA, must satisfy the heightened pleading requirement of Rule 9(b), which requires the plaintiff to "state with particularity the circumstances constituting the fraud."  *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).

## ARGUMENT

## I.    PLAINTIFF'S ALLEGATIONS ARE PRECLUDED BY ILLINOIS LAW.

Illinois precedent—as a matter of law—precludes plaintiffs from maintaining any claim for overpaid sales taxes, much less a class action.

Illinois courts have long recognized that a purchaser cannot recover sales tax that has been remitted to the state.  In the seminal case of *Hagerty v. Gen. Motors Corp.*, 59 Ill. 2d 52, 56

(1974), the plaintiff filed suit against General Motors Corporation ("GM") (a) alleging that she was charged an improper sales tax on automobile parts, and (b) seeking certification of a class action on behalf of all other GM customers who were similarly situated.  The Illinois Supreme Court held that, because it was undisputed that "the tax collected by [GM] from the plaintiff was paid to it voluntarily and without protest, and was then remitted to the State in accordance with the statutory requirements," the putative class action was entirely barred.  *Id.*

Following *Hagerty*, Illinois courts have consistently refused to allow class actions for recovery of allegedly improper sales taxes.  In *Adams*, the Supreme Court again held that class actions to recover sales tax were prohibited where those taxes had been remitted to the Department of Revenue, stating:  "[T]hese appeals do not present a situation wherein denial of class action status will result in the unjust enrichment of a private individual or business entity." 63 Ill. 2d at 348.  And, in *Green v. International Business Machines Corp.*, 37 Ill. App. 3d 124, 130-31 (1st Dist. 1976), the appellate court held that the plaintiffs could not possibly be certified as class representatives when, under *Hagerty*, "***[a]ny right of action which plaintiffs-appellees may have had terminated when [the defendant] paid the taxes to the State*** . . . ."  (Emphasis added).[2]  More recently, in *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 354 (2009), a case which—like this one—dealt with alleged excess sales tax on delivery fees, the court noted that "under Illinois law, once Wal-Mart remits the collected taxes to the state, the class members will have no recourse; the disputed tax funds will be outside of their reach."  *See also Kean v. Wal-Mart Stores, Inc.*, 387 Ill. App. 3d 262, 264 (2008), *aff'd*, 235 Ill. 2d 351 (2009) ("[I]f Wal-Mart

---

[2]  *See also Arnold v. H. Frank Olds, Inc.*, 50 Ill. App. 3d 300, 305 (1st Dist. 1977) (rejecting class certification of claim for recovery of sales tax because, not only would the circumstances of each individual sale need to be determined, but "a showing of unjust enrichment in the individual case is also required"); *Levy v. J.C. Penney Co., Inc.*, 38 Ill. App. 3d 131, 133 (1st Dist. 1976) (rejecting class certification where "the taxes were voluntarily paid and remitted to the State").

were to remit the collected taxes to the state, Kean and class members would no longer have standing to recover the taxes, pursuant to *Adams* . . . .").

Plaintiff does not allege that Defendants have either failed to remit the use tax to the IDOR or failed to pay the appropriate retailers' occupation tax on the transaction, as Illinois law requires. *See* 35 ILCS 105/3-45. Indeed, no party to this action disputes that Defendants have complied with governing regulations and remitted collected sales tax to the State of Illinois.

Under such circumstances, it is clear, from the face of the Complaint, that Plaintiff and the class he seeks to represent have no cause of action; the taxes are, quite simply, "outside of their reach." *Kean*, 235 Ill. 2d at 354. Nor can Plaintiff serve as a class representative. As the Seventh Circuit has unequivocally held:

> A plaintiff who is unable to secure standing for himself is certainly not in a position to "fairly insure the adequate representation" of those alleged to be similarly situated. In short, a predicate to a party's right to represent a class is his eligibility to sue in his own right. ***What he may not achieve himself, he may not accomplish as a representative of a class.***

*Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 499 (7th Cir. 1972) (emphasis added).

In short, none of Plaintiff's legal claims survive the remission of the collected sales tax. Accordingly, the entirety of the Complaint should be dismissed with prejudice and the class allegations stricken.

## II.    THE VOLUNTARY PAYMENT DOCTRINE BARS RECOVERY.

Pursuant to the voluntary payment doctrine, a common-law doctrine incorporated into Illinois law, "monies paid under a claim of right to payment but under a mistake of law are not recoverable." *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 666 (7th Cir. 2001)) (O'Connor, Assoc. J., Ret.). "The doctrine 'applies to ***any cause of action*** which seeks to recover a payment on a

claim of right, whether that claim is premised on a contractual relationship or a statutory obligation . . . .'" *Id.* (quoting *Randazzo*, 262 F.3d at 668) (emphasis added).  Judge Posner, writing for the Seventh Circuit, has described the doctrine as follows:

> If you pay a bill voluntarily—that is, on demand, rather than after being sued or threatened with suit—you can't later sue to recover what you paid, on the basis of facts known to you (or that you should have known) when you paid.  The reason is to reduce uncertainty in commercial transactions; the recipient of the voluntary payment doesn't have to create a reserve against the possibility of having to return the payment.

*Schlueter v. Latek*, 683 F.3d 350, 357 (7th Cir. 2012) (citations omitted).  The voluntary payment doctrine thus "ensures that those who desire to assert a legal right do so at the first possible opportunity; this way, all interested parties are aware of that position and have the opportunity to tailor their own conduct accordingly."  *Randazzo*, 262 F.3d at 668.

Payments are considered "involuntary" under only two circumstances: (1) when there is fraud, misrepresentation, or mistake of fact; or (2) the payment has been made under compulsion or duress.  *See Weiss v. Altholtz*, No. 10 C 02609, 2011 WL 4538459, at *7 (N.D. Ill. Sept. 29, 2011); *see also Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 393 (1989) (holding that a tax has been paid involuntarily only if the taxpayer "lacked knowledge of the facts upon which to protest" or "paid the taxes under duress").  While these circumstances have been described as "exceptions" to the doctrine, they "are actually treated as substantive elements that must be pled in the plaintiff's complaint."  *Weiss*, 2011 WL 4538459, at *7; *see also Goldstein Oil Co. v. Cook Cnty.*, 156 Ill. App. 3d 180, 183 (1st Dist. 1987) ("In a claim for a refund of taxes, involuntary payment is an element of the taxpayer's *prima facie* case, and if a complaint fails to plead a sufficient factual basis to support this element, the action is subject to dismissal.").

In this case, the tax was plainly voluntary.  The Complaint expressly alleges that Plaintiff (1) was charged a delivery fee, (2) the delivery fee was listed separately on the purchase receipt,

(3) Plaintiff was charged a sales tax of $ 0.16 on the delivery fee, and (4) Plaintiff voluntarily paid the additional sales tax in exchange for his order.  *See* Compl. at ¶¶ 10, 17.  Moreover, the facts of the Complaint do not support any exception to the voluntary payment doctrine, nor has Plaintiff asserted, even in conclusory fashion, that any of the exceptions apply.

The first exception applies only where "the payment would not have been paid had the facts been known to the payor."  *Cohn v. Anthem Life & Health Ins. Co.*, 965 F. Supp. 1119, 1122 (N.D. Ill. 1997).   To the extent Plaintiff claims there was any fraud, mistake, or misrepresentation, it was as to the proper amount of tax owed on his order.  *See* Compl. at ¶ 33.  However, the law is clear that a mere misunderstanding or misrepresentation of the applicable law does not defeat application of the voluntary payment doctrine.  *See Spivey*, 622 F.3d at 816 (explaining that "monies paid under a claim of right to payment but under a mistake of law are not recoverable"); *Cohn*, 965 F. Supp. at 1122 (stating that the key distinction is whether payment resulted from a mistake of fact or a mistake of law); *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 811 (3d Dist. 2007) (holding that "a mistake of law is sufficient to bar plaintiff's recovery").  The reason is simple: the law is equally available to both parties.  *See Abrevaya v. VW Credit Leasing, Ltd.*, No. 09–521, 2009 WL 8466868, at *2 (E.D. Pa. July 22, 2009) (stating that unavailability of mistake of law as an exception to the doctrine "is a corollary to the maxim that ignorance of the law is no excuse").

For this reason, courts have held that the voluntary payment doctrine will bar a plaintiff's claim when the only "misrepresentation" concerns the correct amount owed under the governing law or statute.  *Robbins v. Scana Energy Marketing, Inc.*, No. 1:08-CV-640-BBM, 2008 WL 7724171 (N.D. Ga. June 13, 2008), is instructive.  There, the court dismissed a putative class action complaint against a utility company, which had alleged that because the defendant never

informed the plaintiffs that they were being charged for gas usage at rates higher than the published rates," it "prevent[ed] them from being able to learn the truth about" the alleged overcharges. *Id.* at *2. In dismissing the claims, the court found that a "cursory review" of the relevant statutes would have informed the plaintiffs that the utility was required to publish its rates monthly, and that "those rates were clearly within the public domain and readily accessible to Plaintiffs." *Id.* at *5. Thus, the plaintiffs, "[a]t most, . . . made the payments through an unexcused ignorance of law." *Id.* The court therefore rejected the plaintiffs' argument that they "lacked knowledge of the material facts and the means to obtain it[,]" finding the law "settled" that the voluntary payment doctrine cannot be avoided "by reason of the fact that the charges were imposed on plaintiffs by defendants in contravention of a statute." *Id.* at *5-*6.

Similarly, Section 130.415(d) of the Illinois Administrative Code, which Plaintiff relies upon in support of his argument that tax was not owed on the delivery fee, was in the public domain well before Plaintiff made his purchase. That Plaintiff could have investigated for himself whether the tax was required by Illinois law before paying it, but did not do so, defeats any possible assertion of fraud or mistake of fact. *See Spivey*, 622 F.3d at 824 ("Where, as here, 'the plaintiff's lack of knowledge could be attributed to its lack of investigation into the defendant's claim of liability and the basis upon which the defendant was seeking the [payment],' the Illinois courts have rejected a mistake of fact claim.") (quoting *Harris v. ChartOne*, 362 Ill. App. 3d 878, 882 (5th Dist. 2005)); *Goldstein Oil Co.*, 156 Ill. App. 3d at 185-86 (plaintiff's failure to investigate the basis of tax prior to payment barred recovery); *Jursich v. Arlington Heights Fed. Sav. & Loan Ass'n*, 110 Ill. App. 3d 847, 852-53 (1982) (complaint did not support fraud exception to the voluntary payment doctrine, requiring

8

dismissal, because the defendant's alleged misrepresentation of plaintiff's legal obligations "constitute[d] a mistake of law [by the plaintiff] for which the law affords no remedy").

As to the second exception, there is no allegation in the Complaint that could possibly support a finding of duress or coercion. "For a payment to be deemed under duress there must be some actual or threatened power believed to be possessed by the payee over the payor from which the latter has no reasonable means of immediate relief except by paying the tax." *Isberian v. Village of Gurnee*, 116 Ill. App. 3d 146, 151 (1st Dist. 1983). That is not the case here. *See Scott Aviation, Inc. v. DuPage Airport Auth.*, 393 F. Supp. 2d 638, 648-49 (N.D. Ill. 2005) (dismissing claim that "failed to point to one allegation that shows coercion or even hints at coercion").

## III.   PLAINTIFF'S CLAIMS ARE FUNDAMENTALLY DEFICIENT.

### A.   The *Moorman* Doctrine Bars Plaintiff's Tort Claims.

It is black-letter law in Illinois that "economic losses are generally not recoverable in tort actions." *Tyler v. Gibbons*, 368 Ill. App. 3d 126, 128-29 (3d Dist. 2006). "The economic loss doctrine adopted . . . in *Moorman* [*Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69 (1982),] bars a plaintiff from recovering in negligence for losses which are purely economic, which do not involve personal injury or property damage." *Id.* at 129. "[T]he doctrine applies . . . where 'the damages sought by the plaintiffs are 'solely economic damages' in the sense that they represent costs incurred in the absence of harm to a plaintiff's person or property.'" *Gondeck v. A Clear Title & Escrow Exchange, LLC*, No. 11 C 6341, 2014 WL 2581173, at *11 (N.D. Ill. June 9, 2014) (quoting *City of Chi. v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 423 (2004)).[3]

---

[3]   The *Moorman* doctrine "is premised upon the theory that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property, but contract law offers the appropriate remedy for economic losses occasioned by diminished commercial expectations." *Ruscitti v. Atchison, Topeka, & Santa Fe Ry. Co.*, 987 F.

1.      **A Plaintiff Cannot Recover For Negligence (Count I) When, As Here, Its Damages Are Purely Economic.**

In Count I, Plaintiff alleges that Defendants were negligent and breached a duty of reasonable care by (1) incorrectly calculating the amount of sales tax, (2) charging customers a sales tax on a delivery fee, (3) failing to disclose that they were charging sales tax on the delivery fee, and (4) charging more than the advertised delivery fee.  *See* Compl. at ¶ 30.  Plaintiff alleges that, as a result, he suffered financial loss by paying sales tax on non-taxable services.  Compl. at ¶ 31.  Because these purported losses are purely economic, Plaintiff's negligence claim falls **squarely** within the *Moorman* doctrine, and must be dismissed.  *See F.D.I.C. v. Masarsky*, 968 F. Supp. 2d 915, 924 (N.D. Ill. 2013) ("The *Moorman* doctrine prohibits plaintiffs from recovering under a negligence theory for purely economic damages.").

2.      **The Information Provider Exception Cannot Support Plaintiff's Claim of Negligent Misrepresentation (Count II).**

In Count II, Plaintiff asserts a claim for negligent misrepresentation on the ground that Defendants "supplied false information regarding the proper sales tax due and owing."  Compl. at ¶ 33.  Again, Plaintiff alleges nothing more than financial loss.  *Id.* at ¶ 39.

While Illinois law recognizes an exception to the *Moorman* doctrine for certain negligent misrepresentation claims, the exception—known as the "information provider exception"—applies only when "a defendant [is] in the business of supplying information for the guidance of others in their business transactions."  *Masarsky*, 968 F. Supp. 2d at 924 (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 333-34 (2006)).  Thus, such claims are permitted only against "pure information providers" such as accountants, banks providing credit card information to potential lenders, aircraft, inventory, and termite inspectors, title insurers,

---

Supp. 1039, 1043 (N.D. Ill. 1997).  Thus, Illinois courts have held that "contract law provides the **exclusive remedy** for disputes relating to commercial transactions."  *Id.*  (emphasis added).

real estate brokers, or stockbrokers. *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 334 Ill. App. 3d 90, 94 (1st Dist. 2002). By contrast, "when the information offered by the defendant relates to the defendant's tangible goods and/or noninformational goods or services, the information is considered merely ancillary or incidental, and the defendant is not deemed to be in the business of providing information and is not liable for negligent misrepresentation." *Id.* at 95.

Here, Defendants are in the business of "offer[ing] pizza and other foods for sale to the general public." Compl. at ¶ 9. Because this business plainly relates to the sale of tangible products, *i.e.* food, rather than information, Plaintiff's negligent misrepresentation claim is barred by *Moorman*. *See Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 947-48 (N.D. Ill. 2013) (dismissing negligent misrepresentation claim with prejudice where plaintiff did not and could not plausibly allege that defendant, who sold fire trucks, was in the business of supplying information); *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 913 (N.D. Ill. 2006) (dismissing negligent misrepresentation claim with prejudice where defendant manufactured and supplied robotic equipment).

### B. The Complaint Does Not Establish A Breach Of Contract Or Breach Of Duty Of Good Faith And Fair Dealing (Count III).

Plaintiff's claim for breach of contract is incoherent. "Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). "Included in the formation of a valid contract are offer and acceptance, consideration, and definite and certain terms." *Van Der Molen v. Washington Mut. Fin.*, Inc., 359 Ill. App. 3d 813, 823 (1st Dist. 2005).

11

A breach of contract, however, "can only exist where a party fails to carry out a term, promise, or condition of a contract; *a breach cannot result from a party's performance of a contract term*." *Talbert v. Home Sav. of Am., F.A.*, 265 Ill. App. 3d 376, 380 (1st Dist. 1994) (emphasis added).  Thus, in *Talbert*, the court held that there could be no breach of contract where, while the plaintiffs asserted that the defendant breached their agreement by charging an improper loan fee, the plaintiffs had in fact agreed to pay the fee as a term of the contract itself. *Id.*  In affirming the trial court's dismissal of the breach of contract claim, the court concisely observed that "[s]ince the alleged contract provided that the [plaintiffs] would pay the $250 fee, no breach resulted from [the defendant's] collection of it." *Id.*

Similarly, the Complaint in this case alleges that Plaintiff was charged a delivery fee on his order, that he was charged sales tax on the delivery fee, and that he *paid those amounts in exchange for his order*. *See* Compl. at ¶ 17.  Plaintiff was thus given an "offer" to pay the now-challenged sales tax, among other amounts, in exchange for his order—an offer Plaintiff "accepted" by paying.  The price paid, including the tax, was a term of the contract.  Yet, Plaintiff now "turns around" and alleges that Defendants breached the contract by charging the tax to begin with.  *See Talbert*, 265 Ill. App. 3d  at 380.  This is the exact claim which the *Talbert* court rejected.

Nor can Plaintiff maintain an independent claim for breach of duty of good faith and fair dealing.  While it is true that "every contract implies good faith and fair dealing between the parties to it[,] . . . under Illinois law, the covenant of good  faith and fair dealing has never been an independent source of duties to a contract." *Beraha v. Baxter Health Care Corp.*, 956  F.2d 1436, 1443 (7th Cir. 1992).  "Rather, it is a cannon [sic] of construction applied to the explicit terms in the contract" which is "invoked to determine the intent of the parties where a contract is

ambiguous and subject to more than one construction." *LaSalle Bank Nat'l Ass'n v. Moran Foods, Inc.*, 477 F. Supp. 2d 932, 937 (N.D. Ill. 2007). Accordingly, "breach of the duty of good faith and fair dealing is not grounds for an independent cause of action in Illinois." *Aktiengesellschaft v. Material Scis. Corp.*, No. 04-CV-0333-MJR, 2005 WL 2407572, at *3 (S.D. Ill. Sept. 29, 2005).[4]

### C.  There Is No Basis For Declaratory Relief (Count IV).

In federal court, requests for declaratory relief are governed by the Declaratory Judgment Act. *See* 28 U.S.C. § 2201 (2014). The act's purpose is to allow a party that is not certain of its rights "to avoid accrual of avoidable damages . . . and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 576 (7th Cir. 1994). For a declaratory judgment to be appropriate, "there must be action on the defendant's behalf which causes the plaintiff to reasonably apprehend being sued if the plaintiff continues the problematic conduct at issue." *Coalsales II, LLC v. Gulf Power Co.*, No. 06-cv-488-DRH, 2007 WL 612252, at *5 (S.D. Ill. Feb. 23, 2007).

However, a declaratory judgment is not warranted when the plaintiff, rather than seeking a declaration of ***its own rights***, asks the court to declare that ***the defendant*** has committed a wrongful act. "In essence, a declaratory judgment suit allows a party to ask the court if it can do something without incurring liability. It ***does not*** permit a party to ask if an adversary can do something without incurring liability." *Int'l Paper Co. v. Androscoggin Energy LLC*, No. 00 C 6215, 2003 WL 21468623, at *3 (N.D. Ill. June 20, 2003) (emphasis added). Yet, that is exactly what Plaintiff is requesting here. Plaintiff does not ask this court to clarify whether it will be

---

[4]  *See also Lagen v. United Cont'l Holdings, Inc.*, 920 F. Supp. 2d 912, 918 (N.D. Ill. 2013) (dismissing count for breach of covenant of good faith and fair dealing for failure to state a claim); *Jackson v. Ill. Laborers' & Contracting Training Trust Fund*, 827 F. Supp. 2d 868, 872 (C.D. Ill. 2011) (same).

subject to liability for possible future conduct; it asks this court to declare that Defendants have collected an illegal sales tax.  Where, as here, "a claim for declaratory judgment presents the same issues as the remaining substantive claims, it serves no useful purpose and should be dismissed."  *Classic Bus. Corp. v. Equilon Enters., LLC*, No. 09 C 7735, 2011 WL 290431, at *5 (N.D. Ill. Jan. 27, 2011).[5]

### D.   Plaintiff's Claim Under The ICFA (Count V) Must Be Dismissed.

### 1.   Fraud is not pled with particularity.

It is well-recognized that "[c]laims for violation of the [ICFA] are subject to the same heightened pleading standards as other fraud claims; as such, they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure."  *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).  Accordingly, an alleged violation of the ICFA will survive a motion to dismiss only where the plaintiff sets forth "the who, what, when, where, and how" of the alleged fraud.  *Wigod*, 673 F.3d at 569.  This requires, at a minimum, allegations concerning "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).  The Complaint falls woefully short of these requirements.  Rather, Plaintiff relies upon conclusory allegations of some general, unspecified fraud.

---

[5]   *See also Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 778 (N.D. Ill. 2008) ("[T]he plaintiffs acknowledge that the declaratory judgment count fails to add anything that will not be decided by the other pending counts.  Accordingly, the motion to dismiss the declaratory judgment count is granted."); *Household Fin. Servs., Inc. v. N. Trade Mortg. Corp.*, No. 99 C 2840, 1999 WL 782072, at *3 (N.D. Ill. Sept. 27, 1999) (dismissing claim for declaratory relief where the plaintiff "incorrectly couche[d] a breach of contract action as a request for a declaratory judgment").

## 2.      Plaintiff has failed to plead a deceptive or unfair practice.

A claim under the ICFA requires four elements: "(1) a deceptive act or unfair practice by the defendant; (2) intent by the defendant that the plaintiff rely on that act or practice; (3) that the deception or unfair practice occur in the course of conduct involving trade and commerce; and (4) that the deceptive act or unfair practice proximately caused the plaintiff's injury." *Anthony v. Country Life Mfg., LLC*, 70 F. App'x 379, 382 (7th Cir. 2003).   Here, Plaintiff alleges that Defendants engaged in "deceptive practices" by (1) charging sales tax on the delivery fee, and (2) making "material omissions and misrepresentations regarding the proper sales tax due and owing on the delivery fee. . . ."   Compl. at ¶ 59.   Plaintiff further alleges that charging sales tax on the delivery fee is an "unfair practice."   Compl. at ¶ 63.

However, there can be no violation of the ICFA where the alleged misrepresentation concerns a matter of law which the plaintiff was fully capable of determining.   *See City of Aurora v. Green*, 126 Ill. App. 3d 684, 688 (2d Dist. 1984) (complaint failed to state a cause of action under the ICFA where misrepresentations of zoning for property were matters of public record, of which plaintiff was charged with knowledge); *see also Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 805 (2d Dist. 1993) ("A deceptive representation or omission of law generally does not constitute a violation of the [ICFA] because both parties are presumed to be equally capable of knowing and interpreting the law.").   Further, there is no "lack of a meaningful choice necessary to establish unfairness" when the relevant facts are readily available to the plaintiff, and there is no evidence of coercion or lack of reasonable alternatives.   *Anthony*, 70 F. App'x at 382-83.

Indeed, the Illinois Supreme Court has held that an improper or unlawful charge is not, in and of itself, a deceptive or unfair act.   In *Stern v. Norwest Mortgage, Inc.*, 179 Ill. 2d 160, 162

(1997), the plaintiffs alleged that the defendant had violated both the Mortgage Escrow Account Act ("Escrow Act") and the ICFA by charging an "escrow waiver fee."  Even though the Illinois Supreme Court ultimately agreed that the charge was improper under the Escrow Act, it refused to find it deceptive or unfair under the ICFA where the charge "was not intended to deceive or defraud plaintiffs or be unfair to plaintiffs" and "defendant did not conceal, suppress, or omit any material fact with the intent that plaintiffs would rely on such action."  *Id.* at 169.  Rather, "the defendant merely made an honest mistake concerning the interpretation of a statute that had yet to be construed."  *Id.*; *see also Lee v. Nationwide Cassel, L.P.*, 174 Ill. 2d 540, 550-51, (1996) (finding no violation of the ICFA where the defendant's representation, while incorrect, was made with regard to an unsettled question of law); *Cahnman v. Agency Rent-A-Car Sys., Inc.*, 299 Ill. App. 3d 54, 58 (1st Dist. 1998) (holding that even if the challenged fee was prohibited by Illinois law, the court "would nevertheless conclude that there is no violation of the [ICFA] because until now the question was at best unsettled").

In this case, Plaintiff was as capable as Defendants of determining whether, as a matter of law, the delivery fee was to be factored into the price of the product for purposes of determining the amount of sales tax owed.  At most, the parties merely disagree on the interpretation of the applicable statutes and regulations.  Under such circumstances, Plaintiff fails to allege any violation of the ICFA.  *See Stern v. Great Western Bank*, 959 F. Supp. 478, 486 (N.D. Ill. 1997) (dismissing ICFA claim with prejudice where the parties merely disagreed as to whether defendant was required to disclose certain documents under a subpoena).

### E.    Plaintiff Is Not Entitled To Relief Under The Uniform Deceptive Trade Practices Act (Count VI).

Finally, there is no basis for Plaintiff, a consumer, to bring a cause of action under the UDTPA, which "is a codification of the common law of unfair competition."  *Brooks v. Midas-*

16

*Int'l Corp.*, 47 Ill. App. 3d 266, 274 (1st Dist. 1977).  The UDTPA's purpose is "to protect businessmen and provide them with a remedy for unethical competitive conduct," and, "[a]s such, it has generally been held to apply to situations where one competitor is harmed or may be harmed by the unfair trade practices of another."  *Id.* at 274-75.  "Th[e] statute was 'enacted to prohibit unfair competition and was not intended to be a consumer protection statute.'"  *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 98 (1st Dist. 1992) (quoting *Chabraja v. Avis Rent A Car Sys., Inc.*, 192 Ill. App. 3d 1074, 1079 (1st Dist. 1989)).  In fact, Illinois and federal courts have repeatedly dismissed similar UDTPA claims by consumers.

Here, Plaintiff's claim fails for two independent reasons.  First, the charging of an unnecessary tax is manifestly ***not*** "unethical competitive conduct."  *Brooks*, 47 Ill. App. 3d at 274.  Section 2 of the UDTPA "proscribes eleven specifically defined deceptive trade practices."  *Id.* at 275.   The proscribed acts are those which benefit a business at the expense of its competitors, such as passing off goods and services as those of another, or disparaging the business of another by making false or misleading representations of fact.  815 ILCS 510/2(a) (2014).  Plaintiff does not rely on any of these specifically proscribed acts, but rather, relies on Subsection 12, a "catch-all" provision which prohibits "any other conduct which ***similarly*** creates a likelihood of confusion or misunderstanding."  *In re Chapman*, 265 B.R. 796, 823 (Bankr. N.D. Ill. 2001) (quoting 815 ILCS 510/2(a)(12)) (emphasis added).  Charging a sales tax that is not required by Illinois law, as plaintiff alleges, is not in any way similar to the eleven types of misconduct listed in the UDTPA.  To the contrary, collecting an additional tax places Defendants at a competitive ***disadvantage*** by increasing the cost to its customers.  That is clearly not "unethical ***competitive*** conduct," which is what the UDTPA prohibits and which is encompassed by the first eleven subsections.  *Brooks*, 47 Ill. App. 3d at 275 (emphasis added).

Second, Plaintiff cannot establish any basis for injunctive relief—the only remedy available under the UDTPA. *See Camasta v. Jos. A Bank Clothiers, Inc.*, No. 12 C 7782, 2013 WL 474509, at *5 (N.D. Ill. Feb. 7, 2013). "To be eligible for injunctive relief under the [UDTPA], a plaintiff must show that the defendant's conduct will likely cause it to suffer damages *in the future*." *Id.* at *6 (quoting *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 9 (1st Dist. 2009)) (emphasis added).

While consumers are not directly barred from bringing suit under the UDTPA, "[t]he problem inherent in such consumer actions is the inability to allege facts which would indicate that the plaintiff is 'likely to be damaged'" because, "[o]rdinarily, the harm has already occurred, thus precluding a suit for injunctive relief." *Brooks*, 47 Ill. App. 3d at 275. Specifically, because the consumer is aware of the allegedly wrongful conduct, he is "[a]rmed with [the] knowledge" to avoid it in the future. *Reid v. Unilever U.S., Ins.*, 964 F. Supp. 2d 893, 918 (N.D. Ill. 2013). For this reason, courts have consistently dismissed claims under the UDTPA when consumers have claimed they were previously harmed.[6] Likewise, Plaintiff has already paid the tax. And because he is now aware of its alleged impropriety, he can avoid it in the future. He is therefore not entitled to injunctive relief, and his claim under the UDTPA must be dismissed.[7]

---

[6] *See, e.g., Reid*, 964 F. Supp. 2d at 918-19; *Camasta*, 2013 WL 474509, at *6; *Smith v. Prime Cable of Chi.*, 276 Ill. App. 3d 843, 859-60 (1st Dist. 1995); *Glazewski v. Coronet Ins. Co.*, 108 Ill. 2d 243, 253 (1985); *Popp*, 244 Ill. App. 3d at 98-99; *Brooks*, 47 Ill. App. 3d at 275-76.

[7] Because Plaintiff individually lacks standing to seek injunctive relief, he cannot seek such relief on behalf of a class, even if the class members, unlike Plaintiff himself, may pay the tax in the future. *See Camasta*, 2013 WL 474509, at *7 ("Camasta cannot establish standing based solely upon harms to the class members that do not establish a claim for relief personally."); *Popp*, 244 Ill. App. 3d at 99 ("As plaintiff, in an individual capacity cannot bring a cause of action under the [U]DTPA because of the lack of likely future damage, she cannot do so as representative of a class. ); *Brooks*, 47 Ill. App. 3d at 276 ("Since plaintiff Brooks cannot succeed in obtaining injunctive relief in his individual action, the injunctive relief sought by him in his representative capacity on behalf of all class members is likewise unavailable.").

## IV.    THE ENTIRE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING.

"Shotgun" complaints are those which "overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at \*4 (C.D. Cal. June 30, 2010).   As one court has observed, such complaints commonly take two forms:

> First, it can happen when one party pleads multiple parties did an act, without identifying which party did what specifically.   Second, it can happen when one party pleads multiple counts, and does not identify which specific facts fit that Count in that very Count, but instead rely on a blanket incorporation clause that incorporates all of the statement of facts.

*In re Mortgages Ltd.*, Nos. 2:08–bk–07465–RJH, 2:12–ap–01849–RJH, 2013 WL 1336830, at \*12 (Bankr. D. Ariz. Mar. 29, 2013).

The Complaint in this case is guilty of both deficiencies.   First, despite acknowledging that Papa John's International, Inc. and Papa John's USA, Inc. are distinct companies incorporated in different states, Plaintiff nonetheless "lumps" them together, referring to them collectively as "Papa John's" or "Defendants" throughout the Complaint.   Such pleading fails to satisfy the requirement of Rule 8 that the plaintiff give adequate notice as to ***each*** defendant.   *See Scott v. Yellon*, No. 2:13–cv–157–FtM–38DNF, 2013 WL 3802797, at \*1 (M.D. Fla. July 11, 2013) (requiring plaintiff to replead claims to separate each defendant).   Second, each Count improperly incorporates by reference ***every*** preceding paragraph and ***every*** preceding claim. "Courts have discouraged this type of 'shotgun' pleading," which "make[s] it 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

## CONCLUSION

For the reasons set forth above, and because amendment is futile, the Court should dismiss Plaintiff's Class Action Complaint with prejudice and direct the Clerk to enter final judgment in favor of Defendants.

Dated: July 11, 2014                                     Respectfully submitted,

                                                         /s/  W. Jason Rankin_____
                                                         Larry E. Hepler
                                                         leh@heplerbroom.com
                                                         W. Jason Rankin
                                                         wjr@heplerbroom.com
                                                         HeplerBroom LLC
                                                         130 North Main Street
                                                         Edwardsville, Illinois 62025
                                                         Telephone: (618) 307-1117
                                                         Facsimile: (618) 656-1364

                                                         David B. Weinstein
                                                         weinsteind@gtlaw.com
                                                         Nicholas J. Secco
                                                         seccon@gtlaw.com
                                                         Andrew J. Patch
                                                         patcha@gtlaw.com
                                                         **GREENBERG TRAURIG, P.A.**
                                                         625 East Twiggs Street, Suite 100
                                                         Tampa, Florida  33602
                                                         Telephone: (813) 318-5700
                                                         Facsimile: (813) 318-5900


                                                         *Counsel for Defendants,*
                                                         *Papa John's International, Inc.,*
                                                         *and Papa John's USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 11, 2014, the foregoing Motion to Dismiss Class Action Complaint was filed with the Clerk using the CM/ECF system which will provide copies to all attorneys of record herein.

                                                         /s/   W. Jason Rankin_____
                                                         Attorney

20